**PITA DELIGHT, INC., and the Sheik, a Florida Partnership, Plaintiffs,**

v.

**Hassen SALAMI, and The Original Sheik, L.L.C., Defendants.**

No. 98–73546.

United States District Court,
E.D. Michigan,
Southern Division.

Nov. 3, 1998.

Arnold S. Weintraub, Weintrub & Brady, Bingham Farms, MI, for Plaintiffs.

William K. Cashen, Cashen & Strehl, P.C., Mt. Clemens, MI, for Defendants.

## MEMORANDUM OPINION AND ORDER

ZATKOFF, District Judge.

### I. INTRODUCTION

This matter is before the Court on plaintiffs' Motion for a Preliminary Injunction in a trademark infringement action. Pita Delight, Inc., (hereinafter "plaintiff"), is engaged in the restaurant business using the trademark, "The Sheik" as its restaurant name. Hassen Salami and "The Original Sheik, L.L.C.," (hereinafter "defendant") are engaged in the restaurant business as well under the name "Detroit's Original Sheik" at a location approximately four miles from plaintiff's restaurant. Oral argument was heard on whether an injunction should be issued to enjoin defendant's use of plaintiff's trademark at a hearing held on Thursday, October 22, 1998. The Court ordered the parties to submit supplemental briefs by Monday, October 26, 1998. For the reasons

discussed below, plaintiffs' Motion for a Preliminary Injunction is GRANTED.

## II. BACKGROUND

On May 18, 1982, "The Sheik," a Florida partnership (hereinafter "Partnership") obtained a Certificate of Registration from the United States Patent and Trademark Office for the service mark "The Sheik." On January 1, 1998, plaintiff, whose principal is Dean Hachem, acquired a license from the Partnership to use the mark, "The Sheik," in a restaurant business with exclusive rights in the Detroit Metro area. (Plaintiff's Brief p. 1) In July, 1998 defendant opened a restaurant named "Detroit's Original Sheik" at a location approximately four miles from plaintiff's restaurant on the same road, i.e. Orchard Lake Rd.

The background in this case begins with Esther Michaels, who owned and operated the Sheik Restaurant in downtown Detroit, Michigan for more than seventy years. The Sheik Restaurant had a very specific and limited menu from recipes and methods of preparation that were unique. Ms. Michaels, who was widely known for her restaurant, incorporated her restaurant on October 30, 1985 under the name "The Sheik Restaurant, Inc." However, it was dissolved on July 15, 1997. (Defendants Brief p. 4)

Defendant Salami was the maitre d at the Sheik Restaurant for more than seventeen years. He had close relationship with Ms. Michaels and the chef of the Sheik Restaurant. Around April 1996, plaintiff approached defendant and discussed the possibility of establishing a new Sheik Restaurant. (Id. at p. 5) Thereafter, plaintiff and defendant entered into an agreement to establish a new Sheik Restaurant.

In June 1996, plaintiff filed the assumed name, "The Sheik" with the State of Michigan for this new restaurant.[1] Since the restaurant opened, the parties' relationship deteriorated. First, defendant objected to plaintiff's misrepresentation to the public that "The Sheik" restaurant was affiliated with Ms. Michaels and a continuation of the downtown Sheik Restaurant in its advertising and promotional materials. (Defendant's Counter–Complaint ¶ 12) Second, plaintiff failed to pay defendant his share the gross profits that was owed to him. Thus, in October 1997, their business relationship was terminated. (Defendant's Brief at pp. 5–6)

Upon the termination of business relationship, defendant established "The Original Sheik L.L.C." for the purpose of continuing his plans of reviving Ms. Michaels' Sheik Restaurant. In November 1997, defendant filed the assumed name, "Detroit's Original Sheik" for the new restaurant. Defendant authentically reproduced the menus, recipes, and decor of Ms. Michaels' Sheik Restaurant, and made arrangements to hire its former chef. (Id. at p. 6) Defendant's restaurant opened for business in July 1998.[2]

Now, Plaintiff brings suit in this Court claiming trademark infringement under the Lanham Act, 15 U.S.C. § 1114(1). Plaintiff argues that Defendant is infringing upon his trademark, "The Sheik" in the following ways: (1) by adopting a similar name, "Detroit's Original Sheik"; (2) by displaying the mark in such a way that the words "Detroit's Original" are not visible (Plaintiff's Brief Ex. C); (3) by displaying artwork on its carry-out menu which is also prominently displayed inside plaintiff's restaurant (Id. at Ex. D); (4) by using similar phone numbers: 248–865–0000 (Plaintiff) versus 248–865–6000 (Defendant). (Id.) Thus, plaintiff argues that defendant's use of a confusingly similar trademark for identical services causes a likelihood of confusion, deception, and mis-

---

1. Plaintiff has also filed certificates of Assumed Name for his corporation, Pita Delight, Inc. proposing to do business under the name "La Shish n Pita."

2. In response to defendant's competing restaurant, plaintiff filed the additional assumed names of: "The Original Sheik Restaurant," and "Esther Michaels Middle Eastern Cuisine" in December 1997. (Defendant's Brief p. 5) Additionally, plaintiff brought suit in Oakland County Circuit Court seeking a temporary restraining order alleging trade name infringement under state law. Plaintiff was denied a temporary restraining order and was subsequently denied a preliminary injunction. (Id. at p. 3). Plaintiff entered into a licensing agreement with the trademark holder of "The Sheik" in January 1998.

take and is an infringement of 15 U.S.C. § 1114(1).

Defendant argues that his trade name is not likely to cause consumer confusion, that the descriptiveness of Plaintiff's mark is weak and widely used in the area, and that Plaintiff is acting in bad faith under a theory of laches and has unclean hands.

## III. STANDARD FOR A PRELIMINARY INJUNCTION

The Court must consider four factors in ruling on a motion for a preliminary injunction under Fed.R.Civ.P. 65(a):

1. The likelihood of success on the merits;

2. the irreparable harm that could result if the court did not issue the injunction;

3. the impact on the public interest; and

4. the possibility of substantial harm to others.

*Forry, Inc. v. Neundorfer, Inc.,* 837 F.2d 259, 262 (6th Cir.1988); *Moltan Co. v. Eagle–Picher Industries, Inc.,* 55 F.3d 1171, 1175 (6th Cir.1995). As the Sixth Circuit noted in *In Re DeLorean Motor Co.,* 755 F.2d 1223 (6th Cir.1985), district courts must balance the four factors and must not construe the factors as "prerequisites that must be met." *Id.* at 1228–1229 (citations omitted). Furthermore, the *DeLorean* court stated that "[i]n general, the likelihood of success that need be shown will vary inversely with the degree of injury the plaintiff will suffer absent an injunction." *Id.* at 1229 (quoting *Metropolitan Detroit, Plumbing & Mechanical Contractors Ass'n v. Department of HEW,* 418 F.Supp. 585, 586 (E.D.Mich. 1976)).

In the context of an action for trademark infringement, a presumption of irreparable harm attaches once the moving party demonstrates a probability of success on the merits. *DAP v. Color Tile Manufacturing,* 821 F.Supp. 488, 493 (S.D.Ohio 1993).

## IV. TRADEMARK INFRINGEMENT

In order to establish a case of trademark infringement, a plaintiff must be able to show:

a. the mark is valid and owned by the plaintiff;

b. that the defendant is using the same or similar mark; and

c. the use of the mark by the defendant is likely to cause confusion.

*Star Financial Services, Inc., v. Aastar Mortgage Corp.,* 89 F.3d 5, 9 (1st Cir.1996).

The first issue that needs to be addressed is whether the mark is valid and owned by the plaintiff. Plaintiff's mark is federally registered and has become incontestable pursuant to 15 U.S.C. § 1065. Incontestable status provides that:

[T]he registration shall be conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce.

15 U.S.C. § 1115(b).

This presumption for incontestable status is only good to the extent that someone else has not used the mark in the same area, continuously, prior to the registration. *See* 15 U.S.C. § 1065. Ownership of a trademark is not determined by who has registered it first, but, rather, by who has used it first. *Homeowners Group, Inc., v. Home Marketing Specialists, Inc.,* 931 F.2d 1100, 1105 (6th Cir.1991). Thus, if a non-registrant can show by a preponderance of evidence that they are the prior user, then the registration may be invalidated. *Sengoku Works Ltd., v. RMC International, Ltd.,* 96 F.3d 1217, 1219 (1996); *Vuitton et Fils S.A. v. J. Young Enterprises,* 644 F.2d 769, 775–776 (9th Cir.1981). Defendant is not a prior user, and therefore, cannot contest plaintiff's mark.

The remaining two elements that plaintiff must show are whether defendant is using the same or similar mark and whether there is a likelihood of confusion. These are essentially the same question. "In assessing the likelihood of confusion, a court's concern

is the performance of the marks in the commercial context." *Frisch's Restaurant, Inc. v. Shoney's Inc.*, 759 F.2d 1261, 1266 (6th Cir.1985) (Frisch II). When determining whether a likelihood of confusion exists, a court must examine and weigh the following eight factors:

1. strength of the senior mark;
2. relatedness of the goods or services;
3. similarity of the marks;
4. evidence of actual confusion;
5. marketing channels used;
6. likely degree of purchaser care;
7. the intent of defendant in selecting the mark; and
8. likelihood of expansion of the product lines.

*Id.* These factors are interrelated and merely serve as a guide to determine the likelihood of confusion. *Homeowners Group, Inc. v. Home Marketing Specialists, Inc.*, 931 F.2d 1100, 1107 (6th Cir.1991). Moreover, the plaintiff need not address each and every factor in order to prevail. *Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1186 (6th Cir.1988).

## A. Strength of the Marks

The stronger a plaintiff's mark, the more likely there is to be confusion among consumers. This factor encompasses a "mark's distinctiveness and degree of recognition in the marketplace." *Homeowners*, 931 F.2d at 1107. In determining the strength of a mark the court must consider several elements including the mark's incontestability status, the type of mark, general customer recognition, and the number of other registered marks with the same name. *Daddy's Junky Music Stores v. Big Daddy's Family Music Center*, 913 F.Supp. 1065, 1070 (S.D.Ohio, 1996). The strength of a mark is a factual determination of the mark's distinctiveness.

First, the fact that a mark is registered on the principal register creates a presumption that the mark is not descriptive. *Hindu Incense v. Meadows*, 692 F.2d 1048, 1050 (6th Cir.1982). Thus, the fact that the U.S. Patent & Trademark Office registered "The Sheik" on the principal register demonstrates its judgment that the mark was not merely descriptive.

Second, when assessing the mark's strength, a court will place a trademark into one of four categories: generic, descriptive, suggestive, and fanciful or arbitrary. A generic term is the weakest type of mark; it is a term used to commonly describe the relevant type of goods or services, and cannot become a trademark under any circumstances. *Champions Golf Club, Inc. v. the Champions Golf Club, Inc.*, 78 F.3d 1111, 1117 (6th Cir.1996) (citations omitted). Examples of unprotectable generic names are "aspirin," "escalator," and "light beer." *Id.* A descriptive term specifically describes a characteristic or ingredient of an article. For example, " 'descriptive' marks either evoke some quality of the product (e.g., Easy Off, Skinvisible) or describe it directly (e.g., Super Glue)." *Little Caesar Enters., Inc. v. Pizza Caesar, Inc.*, 834 F.2d 568, 570 (6th Cir.1987).

The third type of term is "suggestive," which, as the word implies, "suggests rather than describes an ingredient or characteristic of the goods and requires the observer or listener to use imagination and perception to determine the nature of the goods." *Champions Golf Club*, at 1117. A suggestive term is considered stronger than one that is merely descriptive, and does not require proof of secondary meaning. For example, CITIBANK, which connotes an urban or modern bank, or GOLIATH, for wood pencils, connoting a large size are suggestive terms. *Id.* Finally, fanciful and arbitrary marks are the strongest. "An 'arbitrary' mark has a significance recognized in everyday life, but the thing it normally signifies is unrelated to the product or service to which the mark is attached," such as CAMEL cigarettes or APPLE computers. *Little Caesar Enters.*, at 571.

In this case, plaintiff argues that its mark is arbitrary, "having absolutely no relationship to the service." (Plaintiff's Brief p. 4) Defendant argues that the name "The Sheik" is a generic term or at most is descriptive of middle eastern cuisine when utilized in the restaurant business. (Defen-

dant's Brief p. 4). Since unrelatedness is central to the definition of an arbitrary term, the term "Sheik" is not an arbitrary term because it is related to restaurant services.[3] Relatedness is evidenced by its use in restaurant names in general, and its relation to middle eastern restaurants in particular. Thus, the word "Sheik" is not an arbitrary term.

As stated above, registration of the term "Sheik" is proof that it is not a descriptive mark. Therefore, the Court finds that the mark "Sheik" must be a suggestive term for middle eastern cuisine because it implies rather than describes an ingredient or characteristic of the goods and requires the observer or listener to use imagination and perception to determine the nature of the goods. Since "Sheik" is a suggestive term, it is considered stronger than one that is merely descriptive, and does not require proof of secondary meaning.

## B. Relatedness of the Goods and Similarity of The Marks

Services and goods "are 'related' not because they coexist in the same broad industry, but are 'related' if the services are marketed and consumed such that buyers are likely to believe that the services, similarly marked, come from the same source, or are somehow connected with or sponsored by a common company." *Homeowners Group,* 931 F.2d at 1109. In this case, the parties compete directly by offering the same type of food and service. Thus, confusion is likely if the marks are sufficiently similar. *See, e.g., Champions Golf Club,* 78 F.3d at 1118. In fact in this case, plaintiff has shown that it has received numerous misplaced orders, questions of whether the two restaurants are affiliated, and customer's attempted use of a discount card that is intended for use at defendant's restaurant. (Plaintiff's Supplemental Brief pp. 2–3)

Similarity of marks is a factor of considerable weight. *See Champions Golf Club,* 78 F.3d at 1119. When analyzing similarity, courts should examine the pronunciation, appearance, and verbal translation of conflicting marks. *Wynn Oil I,* 839 F.2d at 1188. "The appearance of the litigated marks side by side in the courtroom does not accurately portray market conditions." *Homeowners Group,* 931 F.2d at 1106. Rather, courts must determine whether a given mark would confuse the public when viewed alone, in order to account for the possibility that sufficiently similar marks "may confuse consumers who do not have both marks before them but who may have a 'general, vague, or even hazy, impression or recollection' of the other party's mark." *Wynn Oil I,* 839 F.2d at 1188 (citation omitted). Moreover, courts must view marks in their entirety and focus on their overall impressions, not individual features. *Homeowners Group,* 931 F.2d at 1109; *see also Little Caesar,* 834 F.2d at 571 (emphasis on the "prominent" feature of a mark and not on its totality violates the rule against comparing component parts of "dissected" marks).

In this case, plaintiff claims that the parties marks are similar because of the way defendant is displaying its restaurant sign. By minimizing the words "Detroit's Original" and enlarging "Sheik" plaintiff claims that the marks are very similar. (Plaintiff's Brief Ex. C) As in *Wynn Oil I,* the Court finds that when defendant's mark is viewed alone, the emphasis is clearly on the term "Sheik," which "may confuse consumers who do not have both marks before them but who may have a 'general, vague, or even hazy, impression or recollection' of the other party's mark," *Id.* at 1188, thus further creating a likelihood of confusion. *See* Plaintiff's Ex. C

## C. Evidence of Actual Confusion

"Evidence of actual confusion is undoubtedly the best evidence of likelihood of confusion." *Wynn Oil I,* 839 F.2d at 1188. Due to the difficulty of securing evidence of actual confusion, a lack of such evidence is rarely significant, and the factor of actual confusion "is weighted heavily only when there is evidence of past confusion, or per-

---

**3.** This is evidenced by the other uses of the word "Sheik" in restaurant names in the metro Detroit area. See Defendant's Brief p. 4 (citing to "The Sheik Restaurant of Dearborn" and "The Sheik of Rochester").

haps, when the particular circumstances indicate such evidence should have been available." *Id.* Nonetheless, isolated instances of actual confusion after a significant period of time of concurrent sales or extensive advertising do not always indicate an increased likelihood of confusion and may even suggest the opposite. *See Homeowners Group,* 931 F.2d at 1110.

■ In this case, plaintiff's have offered some evidence that actual confusion may exist. Plaintiff has received numerous misplaced orders, questions of whether the two restaurants are affiliated, and customer's attempted use of a discount card that is intended for use at defendant's restaurant. (Plaintiff's Supplemental Brief pp. 2–3)

### D. The Remaining Four Factors

■ The fifth factor requires a court to consider the similarities or differences between the predominant customers of the parties' respective goods or services. *See Homeowners Group,* 931 F.2d at 1110. This factor is not applicable in this case. The sixth factor dealing with the degree of care with which consumers likely purchase the parties' goods or services may affect the likelihood of confusion. Generally, in assessing the likelihood of confusion to the public, the standard used by the courts is the typical buyer exercising ordinary caution. No special care is found to exist in this case.

■ The seventh factor requires the court to consider the infringer's intentions. Plaintiff alleges that defendant intentionally copied its mark. "If a party chooses a mark with the intent of causing confusion, that fact alone may be sufficient to justify an inference of confusing similarity." *Homeowners Group,* 931 F.2d at 1111. Intent is relevant because purposeful copying indicates that the alleged infringer, who has at least as much knowledge as the trier of fact regarding the likelihood of confusion, believes that his copying may divert some business from the senior user. *See Little Caesar,* 834 F.2d at 572.

■ In this case, defendant argues that its intent in using the name "Detroit's Original Sheik" was to capitalize on Ester Michaels downtown Sheik restaurant. Defendant argues that it intended to use Ms. Michaels's goodwill not plaintiff's goodwill. However, the Court finds that by adopting a similar phone number for carry-out orders and by locating its restaurant on the same road as plaintiff, defendant did intend to divert business from plaintiff. Thus, the Court finds that defendant's use of the term "Sheik" justifies an inference of confusing similarity between the marks.

## V. CONCLUSION

After a thorough analysis of the four factors for a preliminary injunction, plaintiff has shown that it is likely to succeed on the merits in its trademark infringement suit, and thus, irreparable harm is also established. Additionally, a preliminary injunction serves the public by eliminating a source of confusion and others will not be substantially harmed by this injunction.

For the reasons stated above, IT IS ORDERED that plaintiff's Motion for a Preliminary Injunction is GRANTED. The Preliminary Injunction shall be as follows:

1. The defendant, pending trial in this matter, shall not use the term "Sheik" in its restaurant name; and

2. The defendant shall change is take-out service telephone number.

IT IS FURTHER ORDERED that plaintiff is required to post a security bond in the amount of $25,000.00 pursuant to FED. R.CIV.P. 65(c).

IT IS SO ORDERED.