LAMB KNIT-GOODS CO. *v.* LAMB GLOVE & MITTEN CO.

1. TRADE-NAMES—RIGHT TO EXCLUSIVE USE.

One Lamb invented a knitting machine, and sold his rights under his patents to a corporation, which carried on the man- ufacture at first under the name of the Lamb Knitting- Machine Company, and later under the name of the Lamb Manufacturing Company. The Lamb machine was used by the Lamb Knitting Company, a corporation organized by the inventor for the manufacture of knitted goods, which cor- poration sold its property and business to the Lamb Knit- Goods Company. The last-named corporation employed in its goods a peculiar stitch, which, however, was in com- mon use before such corporation adopted it. The words "Lamb Knit" had come to be generally applied to goods manufactured on the Lamb machines. *Held,* that the Lamb Knit-Goods Company acquired no exclusive right to the use either of the peculiar stitch, or of the word "Lamb," in com- bination with other words, to designate goods of its manu- facture.

2. SAME—SIMILARITY OF CORPORATE NAMES—INJUNCTION.

Lamb, an inventor of knitting machines, assisted in organizing a corporation for the manufacture of knitted goods, princi- pally gloves and mittens, under the name of the Lamb Knit- Goods Company. After acting for some years as its superin- tendent, he left its employ, and organized, in another town, the Lamb Glove & Mitten Company, and engaged in the man- ufacture of gloves and mittens on the Lamb machines. The use of the name was sought to be enjoined under 3 How. Stat. § 4161a, forbidding a corporation from assuming a name so similar to that of another corporation as to be liable to mislead. It was shown that the business of the corporations was conducted through agents largely, and that the public

had in numerous instances been deceived. *Held,* that an injunction should issue.

Appeal from Shiawassee; Smith, J. Submitted February 7, 1899. Decided May 9, 1899.

Bill by the Lamb Knit-Goods Company to restrain the Lamb Glove & Mitten Company and Isaac W. Lamb from using the word "Lamb" in connection with their business in such manner as to mislead complainant's customers. From a decree dismissing the bill, complainant appeals. Reversed.

*Fred L. Chappell* and *H. P. Stewart,* for complainant.

*Cahill & Wood,* for defendants.

MONTGOMERY, J. The complainant avers by its bill of complaint that it is a corporation, with its home offices at Colon, Mich.; that, prior to its organization, the defendant Isaac W. Lamb had organized a company at Concord, Mich., known as the "Lamb Knitting Company," and that, at the time of complainant's organization, it acquired all of the property, business, and good will of the Lamb Knitting Company from Isaac W. Lamb, and paid a valuable consideration therefor; that, at the time of the organization of the complainant, Isaac W. Lamb was interested in the organization of the company, and received a large amount of the capital stock; that the complainant assumed the name of the "Lamb Knit-Goods Company" with the knowledge and consent and at the desire of Isaac W. Lamb; that the complainant was organized to conduct a business similar to that which had been previously conducted by the Lamb Knitting Company, which was the manufacture and sale of knitted goods, principally gloves and mittens; that these gloves and mittens have in the main been knitted with a peculiar stitch, and that, from the connection of complainant's name with said

goods, the peculiar stitch has become known as the "Lamb Stitch;" that gloves and mittens may be manufactured by the same machine with a different stitch, which will be equal to the complainant's in durability; that the stitch used by the complainant is for the purpose of distinguishing complainant's goods; that, after the organization of complainant, Isaac W. Lamb was in its employ for a number of years as superintendent, but that he became dissatisfied, and left complainant's employ on the 8th of April, 1892; that thereafter he, with the assistance of others, organized a company known as the "Lamb Glove & Mitten Company," at Perry, Mich., and commenced to manufacture gloves and mittens knitted with the same peculiar stitch as that employed by the complainant; that the name adopted by the defendant company is similar to that adopted by the complainant, and that purchasers and dealers are deceived thereby, and buy the goods of the defendant believing them to be the goods of the complainant; that the business of the complainant has been damaged thereby. Complainant avers that it is entitled to the exclusive use of the word "Lamb" in connection with knit goods of any description, and to the word "Lamb" in its corporate name; that it has the exclusive right to use the peculiar stitch; and that for this reason the words "Lamb Knit" have become and are a valid trade-mark at common law. The bill prays an accounting and an injunction.

The answer admits that the complainant assumed the name of the "Lamb Knit-Goods Company" with the knowledge and consent of Isaac W. Lamb, but denies that the complainant is entitled to the exclusive use of the words "Lamb Knit," or the use of the word "Lamb" in connection with other words indicating knitted goods. The answer also admits that the complainant acquired all the property, business, and good will of the Lamb Knitting Company, but avers that Lamb acted in the transaction, not for himself, but as agent for the Lamb Knitting Com-

pany. The answer also admits that the defendant corporation organized with, and is conducting a business under, the name of the "Lamb Glove & Mitten Company," but denies the allegation that this name is so similar to complainant's as to mislead purchasers and dealers. The answer further avers that the peculiar stitch adopted . by complainant has been in common use for many years; that the defendant Lamb is the inventor of the knitting machine upon which this stitch is made, and that he sold the, rights, under patents granted to him, to the Lamb Knitting-Machine Manufacturing Company of Rochester, N. Y., and the Lamb Knitting-Machine Company of Springfield, Mass., which companies consolidated under the name of the "Lamb Knitting-Machine Manufacturing Company of Chicopee Falls, Mass.," and that this last-named corporation is still doing business under the name of the "Lamb Manufacturing Company," and is manufacturing Lamb knitting machines; that in 1863 defend. ant Lamb invented a machine for knitting many kinds of knit goods, and procured a patent thereon, and afterwards procured patents on various improvements; that in 1885 he issued printed directions for using the "New Lamb Knitter," manufactured by the New Lamb Knitter Company of Jackson, Mich.; that a large number of persons purchased these machines; that a large number of the persons and corporations which use these machines advertise such goods as made by the Lamb knitters, and that the name of "Lamb," as applied to knitting machines, and the terms "Lamb Knit" and "Lamb Goods," have been in common use in this country, by a large number of different persons, firms, and corporations, for more than 25 years.

The case was heard on pleadings and proofs, and the bill dismissed. Complainant appeals.

We are well satisfied that the complainant has not established its right to the exclusive use of the term "Lamb Knit." The testimony shows that goods manufactured on the Lamb machine were in common use many

years before the organization of complainant company, and that, to distinguish such goods from goods knitted on other machines, they were designated as "Lamb Goods," "Lamb Machine Goods," or "Lamb Knit Goods." It also appears that the peculiar stitch which complainant claims exclusive right to was in common use before complainant adopted it.

The case narrows down to the single question whether the defendant infringed the rights of complainant by the use of a corporate name so similar to that of complainant as to mislead the public, and, if so, what remedy ought to be applied. There can be no doubt that by the transfer to the complainant of the good will of the Lamb Knitting Company it was the intention of the defendant Lamb to grant the right to use his name in connection with the complainant's business. In fact, he assisted in organizing the corporation, and became a stockholder in the complainant company. The statute (3 How. Stat. § 4161a) authorizes the formation of a corporation, and provides that no two companies shall assume the same name, or a name so similar as to be liable to mislead. It is contended that the defendant Lamb had entered into no express agreement not to use his own name, and that Mr. Lamb, in making a sale of the Lamb Knitting Company to the complainant, was acting on behalf of the Concord company, and that the Concord company could not, and Mr. Lamb did not, sell the exclusive right to use Mr. Lamb's name, nor undertake that he would not engage in any similar business elsewhere. It appears, however, that the proposition to the promoters of complainant came from Mr. Lamb, and, as before stated, he is estopped from asserting that the company did not take its name rightfully.

Reference is made to the case of *Williams* v. *Farrana*, 88 Mich. 473 (14 L. R. A. 161). That case, however, recognizes a distinction between a corporate name and that of a partnership. In the majority opinion it is said: "A corporate name is regarded in the nature of a trademark, even though composed of individual names, and its

simulation may be restrained. After adoption, it follows the corporation." Reference is also made to *Supreme Lodge Knights of Pythias* v. *Improved Order Knights of Pythias*, 113 Mich. 133. In the latter case there was no evidence that any person had been misled, and, while the case is near the line, the court held that the rights of complainant had not been infringed. In the present case the testimony shows that dealers have been misled, and in view of the fact that the complainant's business is largely the manufacture of gloves and mittens, and that the name "Lamb" is prominent in the corporate name, we think it is likely to mislead. The case is very similar to *Chas. S. Higgins Co.* v. *Higgins Soap Co.*, 144 N. Y. 462 (43 Am. St. Rep. 769). In that case the complainant's name did not describe its business. The business was, in fact, the manufacture and sale of soap. The court restrained the defendant from carrying on the business in the name of the Higgins Soap Company. The court held that, even if the name was assumed in good faith, without design to mislead the public and acquire the complainant's trade, the defendant, knowing the facts, must be held to the same responsibility. See, also, *Holmes, Booth & Haydens* v. *Holmes, Booth & Atwood Manfg. Co.*, 37 Conn. 278 (9 Am. Rep. 324); *Myers* v. *Buggy Co.*, 54 Mich. 215 (52 Am. Rep. 811); *Frazer* v. *Lubricator Co.*, 121 Ill. 147 (2 Am. St. Rep. 73); *Pillsbury* v. *Flour Mills Co.*, 12 C. C. A. 432, 64 Fed. 841; *Walter Baker & Co.* v. *Baker*, 87 Fed. 209.

It is true that the business office of defendant is not located in the same village as that of complainant, but it appears that the business has been conducted through agents largely, and that the public have, in numerous instances, been deceived. We think the case falls within the class in which protection should be afforded.

The decree will be reversed, and a decree entered restraining the defendant from continuing the use of the corporate name "Lamb Glove & Mitten Company," or any name in which the word "Lamb" appears, in connec-

tion with other words indicating a business similar to that of complainant. Subject to this restriction, defendant is at liberty to advertise its goods as made on the Lamb knitting machine.

The other Justices concurred.